# Hodges *v.* Winston.

*Bill in Equity to enforce   Vendor's Lien on   Land; Cross-
Bills by Mortgagee and Judgment Creditors of  Purchaser.*

1. *Purchase for value without notice; burden of proof.*—Under a plea
setting up a *bona fide* purchase for value without notice of an out-
standing equity or incumbrance, the *onus* is on the purchaser, in the
first instance, to prove purchase and payment; but, when these facts
have been proved, the *onus* is shifted to the person asserting the
equity or incumbrance to prove notice thereof to the purchaser—that
is, either actual notice, or knowledge of facts calculated to put him
on inquiry, and which, if followed up, would have led to discovery of
the equity or incumbrance.

2. *Possession as notice of  title or equity.*—Possession of land as evi-
dence or notice of the possessor's title, as against subsequent pur-
chasers, extends only to the right or title by which it is held; and
when a father, having sold and conveyed a tract of land to his son,
afterwards repurchases a portion of the tract, his possession of that
portion does not charge a purchaser of the residue of the tract from
the son with constructive notice of a vendor's lien for unpaid pur-
chase-money on the original sale.

APPEALS from the Chancery Court of Marshall.

Heard before the Hon. S. K. MCSPADDEN.

The record in these cases shows these facts :   On the 30th
January, 1890, John G. Winston filed a bill in equity in said
court against Edward Winston, who was his son. seeking to
enforce a vendor's lien on a tract of land for purchase-money
alleged to be unpaid.   The tract of land, which contained
about 400 acres, was sold and conveyed by said Winston to
his son, on the 26th May, 1874. at the price of $3,240, of
which amount $1,980.34 was paid in cash, and the purchaser
assumed to pay the balance to certain named creditors of said
Winston; and these facts were stated in a writing of the same
date, which was signed by the purchaser, and was made an
exhibit to the bill.   The bill alleged that the defendant failed
to pay any of these debts, and that the complainant was com-
pelled to pay them.   Edward Winston made  no  defense to
the suit, and a decree *pro confesso* was entered against him.
On February 25th, 1886, a judgment in favor of J. W. Hodges
was rendered by the Circuit Court of said county against said
Edward Winston, and another judgment on the 27th February
in favor of J. N. Matheny; and executions on these judgments
were regularly issued, and levied on said tract of land in the

[Hodges v. Winston.]

possession of said Edward Winston. On the 18th May, 1886, Hodges and Matheny filed their joint petition in the cause, alleging these facts, and asking that they be allowed to intervene as defendants, for the protection of their respective liens on the land; and their petition being granted, they filed an answer, denying that any purchase-money was unpaid on the alleged sale of the land by John G. to Edward Winston, and assailing the various transactions between them, with particular details, as fraudulent and void against their respective creditors.

On the 24th March, 1886, Mrs. Nancy Winston, the wife of said Edward Winston, filed her bill in said court, against her husband, and against said John G. Winston, J. W. Hodges, J. N. Matheny, and Mrs. Martha Sloan, seeking to establish and enforce a resulting trust in the tract of land, on the ground that the cash payment ($1,980.34) made by her husband to said John G. Winston was made with moneys belonging to her statutory estate. Mrs. Martha Sloan was made a defendant to this bill, because she had taken a mortgage on the land, on November 11th, 1882, for $432 borrowed money, which mortgage was signed by said Nancy Winston and her husband. To this bill a joint answer was filed by Hodges and Matheny, denying its allegations on information and belief, and claiming to be purchasers for value without notice; and a separate answer was filed by Mrs. Martha Sloan, which she asked might be taken as a cross-bill, denying notice of Mrs. Winston's equity, and asserting her rights under her mortgage. On February 28th, 1888, the two causes were consolidated by order of the court. On October 25th, 1888, John G. Winston amended his bill by making Mrs. Sloan a defendant; and she at once filed an answer, assailing the validity of the several transactions between John G. and Edward Winston, denying that any purchase-money was unpaid, and claiming protection as a purchaser for value without notice.

On final hearing, on pleadings and proof, the chancellor held that each of the asserted liens on the land was valid, and decreed their priority to be as follows: (1) John G. Winston, (2) Mrs. Nancy Winston, (3) Mrs. Martha Sloan, (4) J. W. Hodges, and (5) J. N. Matheny; and the register having reported the amount of each of these claims, the chancellor ordered a sale of the land, and the application of the proceeds to the several liens in the order named. An appeal from this decree is sued out by Mrs. Sloan, Hodges and Matheny, who assign as error, jointly and severally, that part of the decree which gives preference to the claims of John G.

19

[Hodges v. Winston.]

Winston and Mrs. Nancy Winston, together with the overruling of several exceptions to the register's report.

BROWN & STREET, for appellants.

WATTS & SON, *contra.*

McCLELLAN, J.—These cases were tried as one in the court below, and are so submitted and will be considered here.

"The rule as to proof of *bona fide* purchase is, that the party pleading it must first make satisfactory proof of purchase and payment. This is affirmative, defensive matter in the nature of confession and avoidance, and the burden of proving it rests on him who asserts it. *Ei incumbit probatio qui dicit.* This done, he need not go further, and prove he made such purchase and payment without notice. The burden here shifts, and if it be desired to avoid the effect of such purchase and payment, it must be met by counter proof that, before the payment, the purchaser had actual or constructive notice of the equity or lien asserted, or of some fact or circumstance sufficient to put him on inquiry, which, if followed up, would discover the equity or incumbrance."—*Craft v. Russell,* 67 Ala. 9, which collects the authorities; *Taylor v. A. & M. Asso.,* 68 Ala. 229; *Creswell v. Jones,* Ib. 420; *Barton v. Barton,* 75 Ala. 400, 402.

In the case at bar, Mrs. Sloan sets up that she became a mortgagee of the land in controversy for value, and without notice of the claim now advanced by John G. Winston, Sr., for purchase-money alleged to be due from Edward Winston, the mortgagor, who held the legal title, and also without notice of the claim now advanced of Nancy Winston, the wife of said Edward, which proceeds on the theory that the land was in part paid for with funds belonging to her statutory separate estate, and is sought to be worked out through a declaration of trust in her favor for reimbursement. That Mrs. Sloan did lend Edward Winston the money for which a mortgage was taken, and that the mortgage was duly executed by said Edward and his wife upon this land to secure its repayment, are facts not controverted in the case. The protection she invokes as a *bona fide* purchaser is sought to be defeated by John G. Winston, Sr., in respect of his claim for unpaid purchase-money, by proof of possession by him of a part of the land—a certain forty-acre parcel—embraced in the mortgage at the time of its execution, which possession, he insists, was constructive notice to her of his lien upon the whole tract for the balance of the price at which he sold to

Edward, the mortgagor. This proposition will be examined further on. By Mrs. Nancy Winston, Mrs. Sloan's alleged rights as a *bona fide* purchaser are attempted to be defeated by evidence going to show that, at the time of advancing the money and taking the mortgage, the mortgagee had actual notice that funds belonging to Mrs. Winston's separate estate were used in the purchase of the land by Edward from his father, John G., Sr., and hence of her claim to reimbursement out of the land. On this issue the burden, as we have seen, was with Mrs. Winston. It was upon her to prove to the satisfaction of the chancellor, by such preponderance of evidence as should also suffice on appeal to satisfy this court, that at or before the time of the transaction Mrs. Sloan either knew of the existence of her claim, or had notice of such facts as would have put her on inquiry which, if properly prosecuted, would have led to a knowledge of the claim now made by Mrs. Winston. In our opinion, this has not been done. The evidence fails to satisfy us that Mrs. Sloan, when she made the loan and took the mortgage to secure its repayment, had any knowledge or notice of the rights brought forward in Mrs. Winston's bill, seeking to have a resulting trust declared in her favor to the amount of her money used in the purchase. The evidence offered to prove such notice goes only to show alleged remarks made by Mrs. Sloan at the time of the transaction with reference to the execution of the mortgage, by Mrs. Winston as well as her husband, which remarks, making allowance for the improbability of their being accurately reproduced by the witnesses, may well be held to import no more than a knowledge of Mrs. Winston's marital rights in the lands of her husband. On the other hand, Mrs. Sloan testifies positively and explicitly, and without evasion or equivocation, that she had no notice or knowledge whatever of any individual right, claim or interest of Mrs. Winston; and Mrs. Winston herself swears that she has no recollection whatever of anything being said at any time, by or in the presence of Mrs. Sloan, with reference to the fact that her money had been used by her husband in part payment for the land. On this state of the testimony, we do not think Mrs. Winston has discharged the burden which rested upon her to affirmatively show that Mrs. Sloan had notice of her claim upon the land for reimbursement; and we accordingly hold that, as to that claim, Mrs. Sloan is a *bona fide* purchaser without notice.

Was Mrs. Sloan chargeable with notice of John G. Winston's lien for purchase-money, by reason of his possession at the time the mortgage was executed of a forty-acre subdivision of the land? We think not. The uncontroverted facts in that

[Hodges v. Winston.]

connection are, that Edward Winston, some time after he had purchased the lands from his father and received an absolute conveyance of them in fee, sold back to John G. Winston, Sr., the forty acres in question, and put him in possession. This transaction was entirely separate and distinct from, and without any reference whatever to, the original sale of the whole tract by John G. to Edward Winston. No fact or circumstance involved in it would have been other than it was had no lien for purchase-money existed in favor of John G. Winston, Sr., under the sale to his son. The consideration agreed to be paid and actually paid by John G., Sr., for these forty acres did not consist in the satisfaction *pro tanto* of his claim for unpaid purchase-money on the original transaction, but of the satisfaction *pro tanto* of a mercantile account which had been contracted by Edward with his father after the sale by the latter to the former. The claim or title of John G., Sr., to the forty-acre parcel was not in any degree rested on his claim for unpaid purchase-money, or referable to it, but grew out of an entirely independent transaction, no circumstance of which pointed to or indicated the previously existing claim for unpaid purchase-money. Nay more, the fullest inquiry into, and completest discovery of all the facts involved in this latter transaction, so far from affording notice of the first one and Winston's lien under it, would have tended to assure the purchaser from Edward that his father had no lien for purchase-money on any of the land, since it would have been reasonable to suppose that had such been the fact the parcel sold back to him would have been paid for by satisfaction in part of the debt secured by the lien, and not upon another and distinct consideration. Be this as it may, however, it is certainly the law, that possession is notice to a subsequent purchaser *only of the right or title in or by which the possession is held;* and the possession of the forty-acre tract by John G. Winston, Sr., in this case being under a re-purchase on independent consideration from Edward, the transaction bearing no relation whatever to the purchaser's rights as vendor in the original sale, was notice to Mrs. Sloan that the father had bought the land from the son, paid him for it, and held it as such purchaser. There is manifestly nothing in the fullest knowledge of these facts which would tend to excite inquiry as to this purchaser's rights respecting other lands, both the absolute legal title and possession of which were in Edward Winston, the mortgagor.—*Fassett v. Smith,* 23 N. Y. 252; *Suiter v. Turner,* 10 Iowa, 517, 524–5; *Leach v. Ausbacher,* 55 Pa. St. 85.

The fact of John G. Winston's Sr. possession of this parcel

was notice to Mrs. Sloan that he had bought and paid for it, and she took the mortgage subject to any rights which these facts vested in him, as to that particular tract; but it was no notice to her of his lien for purchase-money on the other land covered by the mortgage, since these facts, so far from putting her on inquiry which would have discovered the lien, were, inferentially at least, inconsistent with its existence.

The rulings and decree of the chancellor in all other respects have been carefully considered. We concur with his conclusions on exceptions to the register's report, and in holding that Hodges and Matheny had notice of the claims of John G. Winston, Sr., and Mrs. Nancy Winston, before their rights accrued, and hence that their claims are secondary to those of the respective complainants. That Mrs. Winston is entitled to reimbursement out of the land, and that John G. Winston, Sr., has a valid vendor's lien upon it, except as against Mrs. Sloan, we do not doubt. Mrs. Sloan, however, must be first paid; and in failing to so decree, the chancellor erred.

The decree is reversed, and the cause remanded.