(93 South. 604)

MARSH et al. v. ELBA BANK & TRUST CO. et al. (4 Div. 963.)

(Supreme Court of Alabama. May 18, 1922.)

1. Mortgages ⬤⇒594(1)—Equity of redemption in deceased mortgagor's heirs.

Mortgage not having been foreclosed, the heirs of deceased mortgagor have an equity of redemption.

2. Mortgages ⬤⇒605—Tender of offer necessary to enforce equity of redemption.

To enforce equity of redemption, the holders thereof must make a tender of what they concede to be due, or offer to pay what the court may find due.

3. Mortgages ⬤⇒605—Bill to redeem held sufficient as to offer.

That complainants by their bill to redeem from unforeclosed mortgage offer to pay, and aver they are ready, willing, and able to pay whatever amount may be found to be due, and to pay it according to the terms of the mortgage, as the court may direct, is sufficient to give them right in equity to enforce their equity of redemption.

4. Mortgages ⬤⇒298(4)—On payment of debt title to property divests from mortgagee.

Under Code 1907, § 4899, on payment of the debt secured by mortgage on real or personal property or both, the title of the property is at once divested out of the mortgagee and vested in the holders of the equity of redemption, so that, the mortgage covering both real and personal property, sale of the personal property by the mortgagee for enough to pay the debts divests title to the real property from mortgagee.

5. Chattel mortgages ⬤⇒262(1) — Mortgagee selling at private sale under power accountable for reasonable value.

Mortgagee of personal property, selling it at private sale under power, is accountable for its reasonable value, regardless of the price he actually receives.

6. Mortgages ⬤⇒369(3)—Sale under power, if for purpose of oppression, fraudulent and void.

Sale under power in mortgage, soon after mortgagor's death, while all his heirs were minors, if not made to secure payment of debt secured, but to secure a profit through agreement with the purchaser, and to oppress the heirs, was fraudulent and void, and subject to be set aside on that ground.

7. Limitation of actions ⬤⇒100(1)—Mortgages ⬤⇒369(5)—Suit to avoid sale for fraud under power required within reasonable time after discovery, and within one year by statute.

Suit to avoid for fraud a sale under power in a mortgage must be brought within a reasonable time, depending on the circumstances, after the discovery of the fraud; and by Code 1907, § 4852, is barred in a year thereafter.

8. Equity ⬤⇒148(3) — Bill for relief from mortgage and sale held not multifarious.

Bill seeking relief from mortgage and sale thereunder *held* not multifarious in view of Code 1907, § 3095.

9. Mortgages ⬤⇒369(7)—When burden of proof shifts to complainant on issue of bona fide purchaser stated.

In suit to set aside a foreclosure sale on defendant's pleading and proving bona fide purchase and payment, the burden of proving defendant had notice of fraud in foreclosure before purchasing and paying for the land shifts to complainant.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Bill by J. T. Marsh and others against the Elba Bank & Trust Company and others. From a decree sustaining demurrers to the bill complainants appeal. Reversed, rendered, and remanded.

J. A. Carnley, of Elba, and J. J. Mayfield, of Montgomery, for appellants.

Fraud is a conclusion to be drawn from facts, and consists of acts or omission to act which involve a breach of duty, trust, or confidence, injurious to the party complaining. 2 Ala. 571; 56 Ala. 98; 76 Ala. 347. An asserted title founded on fraud is utterly void. 64 Ala. 162; 72 Ala. 1; 50 Ala. 32. A foreclosure sale, invalid by reason of unfairness or irregularity, may be set aside and ordered ineffective to cut off equity of redemption, and mortgagee is charged with reasonable value, regardless of amount received for property. 186 Ala. 360, 64 South. 621. The bill has equity. 186 Ala. 367, 64 South. 621; 117 Ala. 501, 22 South. 989; 42 Kan. 477, 22 Pac. 612, 16 Am. St. Rep. 501.

W. W. Sanders, of Elba, for appellees.

It is not fraud for one to exercise a legal right, and the act, being lawful, will be jus-

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tified without regard to intent. 127 Ala. 343, 28 South. 468; 186 Ala. 360, 64 South. 621; 103 Ala. 119, 15 South. 440, 49 Am. St. Rep. 17; 203 Ala. 228, 82 South. 478; 26 C. J. 1177; 12 R. C. L. 237; 14 Am. & Eng. Encyc. Law (2d Ed.) 143. If facts from which the conclusion is drawn are not sufficient to show the loss was attributable to fraud, the declaration is bad. 12 Encyc. Pl. & Pr. 1041; 115 U. S. 426, 6 Sup. Ct. 81, 29 L. Ed. 435. The action is ex delicto, and is barred by the statute of limitations of one year. Perry on Trusts (6th Ed.) 996; 132 Ala. 535, 31 South. 607; 168 Ala. 469, 53 South. 228; 203 Ala. 692, 85 South. 1.

MILLER, J. This bill of complaint was filed by J. T. Marsh, Mildred Marsh, and Luie Frank Marsh, minors, by their next friend, Eva C. Marsh. They are the heirs, and their next friend is the widow of Tavner Marsh, who died intestate January 17, 1916. The Elba Bank & Trust Company, a banking corporation, George M. Forman, J. A. Marsh, and L. A. Boyd, are the defendants.

The original bill was amended twice. The defendants demurred to the original bill, and to the bill as amended in each instance. The court sustained the demurrers to the original bill, and to the bill as amended. The decree of the court is assigned as error. The bill as amended is for an accounting and redemption under a senior mortgage on real estate before foreclosure, to declare null and void for fraud a foreclosure sale of the real estate and personal property under a junior mortgage on the said real estate, which is a senior or first mortgage on the personal property, and for an accounting and redemption, and to set aside a resale of a part of the real estate.

[1-3] Tavner Marsh, the father of complainants, owned and possessed 237 acres of land in Coffee county, Ala. Tavner Marsh and said Eva. C. Marsh [his widow] did on January 29, 1915, execute and deliver a mortgage to the defendant George M. Forman on this 237 acres of land to secure $4,000. It has not been foreclosed. This mortgage not having been foreclosed, the complainants, heirs of the deceased mortgagor, have an equity of redemption in the land conveyed by it. Lewis v. McBride, 176 Ala. 134, headnote 2, 57 South. 705. The complainants to enforce this equity of redemption must make a tender of the amount they concede to be due on the debt secured by the mortgage, or they must offer to pay whatever may be found to be due by the court. Jackson v. Putman, 180 Ala. 39, headnote 4, 60 South. 61. A part of this mortgage debt is past due, and part has not yet matured. The complainants make no admissions as to the exact amount due, they make no tender of any amount, but they offer to pay, and aver they are ready, willing, and able to pay, whatever amount may be found due, and to pay it according to the terms and conditions of the mortgage contract, as the court may direct. These averments are sufficient to give the complainants the right in equity to enforce their equity of redemption in the land described in and conveyed by this mortgage which has not been foreclosed. Lewis v. McBride, 176 Ala. 134, headnote 2, 57 South. 705; Jackson v. Putnam, 180 Ala. 39, headnote 4, 60 South. 61.

[4] Tavner Marsh and Eva C. Marsh executed and delivered on April 6, 1915, to the Elba Bank & Trust Company, defendant, a mortgage, second mortgage, on the 237 acres of land and a first mortgage on some of the personal property therein described, to secure a debt due the bank. This mortgage authorized and permitted the mortgagee to sell the real or personal property or both at public or private sale as it may deem best. The bill avers that the defendant bank, after the maturity of the mortgage debt, after the death of the mortgagor, father of complainants, made a pretended, sham, and fraudulent sale of the real and personal property at private sale to J. A. Marsh, father of the mortgagor, and the grandfather of the complainants. The bill avers the bank sold all the personal property in mass to him for $1,600, and then sold him the real estate for $1,072.22 on February 3, 1916. The bill avers:

"That the personal property thus taken over was sufficient in value and amount to satisfy and pay off all indebtedness due the said Elba Bank & Trust Company, without any sale of the lands, but it was the purpose to name and fix a price as to each land and personal property, in the same pretended foreclosure deed, in order that these complainants might be forever barred of their equitable right to redeem the said lands; and they aver that there was not in fact a real, bona fide sale, under the power contained in the said mortgage, Exhibit A, but that the same was a mere sham or form or pretext, and made for the purpose of depriving these complainants of their right to redeem; * * * and that said personal property more than paid off and discharged the indebtedness due said bank on its said mortgage, and at the time the said pretended foreclosure sale was made at Elba, at private sale under the power of said mortgage, and the deed made to the lands described for a recited consideration of $1,072.22, there was in fact and in truth no balance due on the said mortgage, Exhibit A, and the said pretended foreclosure was absolutely void as to said lands."

When the debt secured by a mortgage on real or personal property or on both is paid, the title to the property passing by the mortgage divests. Section 4899, Code 1907, and authorities there cited. If the proceeds of the personal property conveyed by the mortgage, which was received by the bank and sold, exceeded in amount or paid the mortgage debt, as averred in the bill, then this released the 237 acres of land from the

mortgage, the title to it divested out of the bank into the heirs of the mortgagor, and the bank had no right or authority to sell it at public or private sale. A sale of the real estate under the mortgage after the mortgage debt was paid would be void; such a sale would pass no title; the title to the land was divested as soon as the mortgage debt was paid by a sale of the personal property if it brought an amount sufficient to pay the mortgage debt. Section 4899, Code 1907.

[5] Under these averments, if true, the complainants could properly seek in this bill to have the sale of the land under the mortgage by the bank to Marsh declared null and void; and the deed by the bank to Marsh, conveying the real estate, canceled and annulled. The bill alleges this personal property received by the bank under the mortgage, and pretended to have been sold privately to J. A. Marsh for $1,600, was in fact and in truth worth, at a fair and reasonable valuation, $5,000, instead of $1,600.

This court in Zadek v. Burnett, 176 Ala. 88, 57 South. 450, wrote:

" 'Although the mortgagee, by the terms of the mortgage, was authorized to sell the personal property embraced in the mortgage at private sale, this did not relieve him, in taking possession of and selling the property, from the duty of acting in the utmost good faith in selling the same. In selling the property at private sale for the satisfaction of his mortgage debt, it was his duty to sell it at a fair and reasonable valuation, and, failing to do so he became liable to the mortgagor for such failure.' Per Dowdell, J., in Johnson v. Selden, 140 Ala. 418, 37 South, 249, 103 Am. St. Rep. 49. The effect of the authorities is to hold a mortgagee who sells at private sale responsible and accountable for at least the fair and reasonable value of the property, regardless of the price actually received by him."

This is clear and comprehensive. Under the alleged facts, if true, the court in this cause can ascertain a fair and reasonable valuation of the personal property, and on the accounting and redemption charge the mortgagee, who sold it at private sale under the power of sale in the mortgage, with the reasonable value of the personal property sold, regardless of the price actually received by the bank for it. Harmon v. Dothan Bank, 186 Ala. 360, 64 South. 621; Zadek v. Burnett, 176 Ala. 88, 57 South. 447; Johnson v. Selden, 140 Ala. 421, 37 South. 249, 103 Am. St. Rep. 49.

[6] The complainants aver that the foreclosure sale under the mortgage of the personal property and real estate is void, that it was a sham and a pretense, and that it was not a bona fide but a fraudulent sale.

In Struve v. Childs, 63 Ala. 476, this court quoted approvingly:

"In Robertson v. Norris, 4 Jurist, N. S. 155, Sir J. Stuart, vice chancellor, said: 'The legiti-mate purpose, for which the power to sell in this defendant's mortgage deed was given, was to secure him repayment of his mortgage money. If he uses the power to sell, which he gets for that purpose, for another purpose, from any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals, the court considers that to be what it calls a fraud in the exercise of the power, because it is using the power for a purpose foreign to the legitimate purposes for which it was intended.' This ruling was affirmed on appeal."

If the power of sale in the mortgage is used by the mortgagee to oppress the debtor or his minor heirs or widow, a court of equity will declare it void and set it aside after it is made. This would be a fraudulent foreclosure sale. Henderson Law Co. v. Wilson, 161 Ala. 504, 49 South. 845. If the power of sale in the mortgage is used by the mortgagee at an authorized private sale for the purpose of enabling the mortgagee to acquire the property himself or an interest in the future profits and proceeds of it by a resale, or to serve the purpose of another not a party to it, a stranger to the mortgage, this would be foreign to the legitimate purposes of the mortgage, and would render the sale subject to be declared null and void. Struve v. Childs, 63 Ala. 476.

The bill avers that the defendant bank and J. A. Marsh conspired and acted in concert to acquire all of the property of complainants for as little consideration as possible, and to share in the proceeds and profits; and that each shared in the profits and proceeds; that they falsely represented to the mother of complainants that they were acting in her and her children's interest, when in fact they were acting for themselves, induced and impelled by selfish motives to acquire this property for themselves, and to deprive complainants and their mother of all their legal rights and title to the property.

The complainants are minors, between the ages of 4 and 9 years. Their father, the mortgagor, died January 17, 1916. Within 16 days thereafter almost the entire personal property of the deceased and the real estate in the mortgage were sold to J. A. Marsh at private sale under the mortgage. The deed conveying it to him was signed and dated February 3, 1916; but was not delivered to him until more than two years thereafter, and was not filed for record until March 1, 1918, after the time for statutory redemption. On the same day of the alleged foreclosure sale of the property under the mortgage at private sale, Eva C. Marsh, mother of complainants and widow of the mortgagor under the influence of the bank and J. T. Marsh, her father-in-law, executed a quitclaim deed to J. T. Marsh, the alleged purchaser at private sale, conveying to him all of the personal property and the 237 acres of land for a recited consideration

of $1, and other valuable consideration. This deed was not filed for record for more than two years after its execution. The entire personal property in the mortgage was sold by the bank to J. A. Marsh in bulk for $1,-600, when its fair and reasonable value was $5,000. This personal property consisted of 1,200 bushels of corn, 5 mules, 2 colts, 40 head of cattle, 75 head of hogs, 2 wagons, and harness, 1 buggy, 7 or 8 tons of phosphate, and other articles of small value. The 237 acres of land were sold to him for the sum of $1,072.22, when the first lien mortgage debt on it to Forman did not exceed $4,-000, and the fair and reasonable value of the land was $12,000. On March 11, 1918, just after the deed was delivered and recorded, and just a little over two years after the private sale under the mortgage, L. A. Byrd received for a consideration of $5,000 a deed from J. A. Marsh and wife to 145 acres of the 237 acres of land. The bill contains this averment:

"The complainants further aver that each of the respondents did share in the profits and proceeds derived from or in consequence of the great wrongs and frauds perpetrated upon these complainants by the respondents as is hereinbefore set forth in this bill to which reference is made as a part of the averment of this paragraph. That the exact proportion or amount of the profits realized by each of these respective respondents or the amount or proportion of which each was to receive in consequence of their conspiracy to defraud the complainants is unknown to these complainants, but is known to the respondents; but the complainants aver that each of the respondents in accordance with their agreement and conspiracy to defraud the complainants were to and did share in the profits and proceeds resulting from the great wrongs and injuries which they perpetrated upon these complainants."

The facts averred in the bill are sufficient, if true, to show the foreclosure sale by the bank to Marsh was fraudulent, and, if it was fraudulent, then it is void. The facts averred are confessed by the demurrer, and they indicate the private foreclosure sale was made in bulk by the bank for the purpose of enabling another, a stranger to the mortgage, to secure the property for less than its value, so that the purchaser and the bank, or the purchaser alone, could secure large profits in the property or in a resale of it. The sale made in this way by the mortgagee soon after the death of the mortgagor, all of his heirs being minors, with no guardian, was oppressive to them, and their interests.

[7] Is the cause barred? When a conveyance is sought to be avoided on account of fraud, the aid of the court must be requested within a reasonable time after the discovery of the fraud. Goree v. Clements, 94 Ala. 337, 10 South. 906. What is a reasonable time within which the parties must act will depend upon their situation and the circumstances attending and surrounding the particular case. Goree v. Clements, supra; Randolph v. Vails, 180 Ala. 82, 60 South. 159. In Randolph v. Vails, 180 Ala. 82, 60 South. 159, we find this rule declared by the court through Justice De Graffenried:

"The repose, confidence and security of business transactions require, therefore, that such purchases, after the lapse of two years without redemption, shall be free from attack, unless the situation of the parties and the equities of the situation are such as to shock the conscience of a court of equity and require the application of some other rule."

Section 4852 of the Code of 1907 reads as follows:

"In actions seeking relief on the ground of fraud, where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud, after which he must have one year within which to prosecute his suit."

The bill in this case was filed May 15, 1919, and it alleges in substance that it was filed as soon as the facts constituting the fraud in the foreclosure sale were discovered. Under the situation of the parties, the peculiar circumstances of this case, the averments of the bill, and the equities of the situation, the bill was filed by these minors, who have no guardian, within a reasonable time after the discovery of the facts constituting the fraud in the foreclosure sale; and the cause is not barred by statute or laches.

[8] The bill is not multifarious. It seeks relief growing out of the same subject-matter, and relating to the same property between the same parties, and parties with some interest in the property involved in the cause. Section 3095, Code 1907.

"A bill is not multifarious which seeks alternative or inconsistent relief growing out of the same subject matter or founded on the same contract or transaction, or relating to the same property between the same parties." § 3095, Code, 1907.

[9] Is L. A. Byrd the defendant a bona fide purchaser for value of the 145 acres of land, without notice, actual or constructive, of the alleged fraudulent foreclosure sale of the land under the mortgage by the bank? The doctrine of bona fide purchase for value without notice is available as defensive matter. When L. A. Byrd alleges and proves a bona fide purchase and payment for the land, which burden is on him, then the burden of proof shifts onto the complainant to prove the defendant had actual or constructive notice of the facts constituting the fraudulent foreclosure sale before purchasing and paying for the land. Hodges v. Winston, 94 Ala. 576, 10 South. 535; Barton v. Barton, 75 Ala. 400; Snellgrove v. Evans, 165 Ala. 322, 51 South. 560.

The bill alleges that on March 11, 1918,

J. A. Marsh and wife executed and delivered to Byrd for a consideration of $5,000 a deed to 145 acres of the land; that Byrd is in possession of it, and "claim some interest or title in the same." It does not aver that Byrd is a bona fide purchaser of the land, and has paid $5,000 for it. This burden is on the defendant Byrd. The complainants have not assumed it. When this defendant avers and proves that he bona fide purchased the land, and has paid the $5,000 for it, then the burden will be on complainant to prove that before purchasing and paying for it he had actual or constructive notice of facts constituting and making the foreclosure sale of the land by the bank fraudulent, or had notice of some fact or circumstance sufficient to put him on inquiry, which, if he had followed up, would have led to a discovery of the facts showing the sale was fraudulent. Hodges v. Winston, 94 Ala. 576, 10 South. 535; Barton v. Barton, 75 Ala. 400; Snellgrove v. Evans, 165 Ala. 322, 51 South. 560.

There is equity in the bill of complaint as amended. The demurrers to the bill of complaint as last amended were sustained by the court. This was error. They should have been overruled. A decree will be rendered here, overruling the demurrers and remanding the cause.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.