This is an appeal by plaintiffs from a judgment entered in favor of the defendants in an action seeking to have determined, among other things, plaintiffs' intestate shares of a certain 80-acre tract of land situated in Macon County, Alabama. We affirm.
The facts of this case are undisputed and were stipulated at trial. Roseal Bettis died intestate on October 29, 1975. He was survived by his widow, Dandy B. Bettis (Maxwell), and their minor son, Ross Bettis, the defendants herein, as well as two other minor children born of a previous marriage, Valda Bettis and Roseal Bettis, Jr., the plaintiffs herein. At the time of his death, Roseal Bettis owned, among other property, an 80-acre tract of land in Macon County which was subject to a mortgage given to C. Baxter Dean.[1] The property had an equity value of $9,000 at the time of Roseal's death.
Following Roseal's death, a final payment was made on the mortgage on November 8, 1975. Shortly thereafter, Dandy Bettis went to see Dean to discuss getting the property transferred to her. At that time, or shortly thereafter, it was agreed that Dean would foreclose on the mortgage, attempt to buy in the property at the foreclosure sale, and then turn around and resell it to Dandy for the mortgage balance at the same rate of interest.
On February 23, 1976, Dean purchased the property at the foreclosure sale, and four days later, on February 27, 1976, *Page 849 
Dean and his wife executed a warranty deed conveying the property to Dandy. At her expense, Dandy's attorney handled the foreclosure proceedings for Dean and prepared the foreclosure deed. He also prepared the mortgage note Dandy gave Dean as well as the warranty deed executed by Dean and his wife to Dandy. That deed contained the following exception:
 "The property herein conveyed is subject to the statutory right of redemption from foreclosure, said property being purchased by the Grantor herein at the mortgage foreclosure sale of the Roseal B. Bettis mortgage foreclosed on February 23, 1976, and said right of redemption is specifically excepted from the warranty provisions contained herein."
Some two and one-half years later, Dandy sold the timber on the 80-acre tract for $16,594, $12,594 of which she applied to the note and mortgage held by Dean, and the remaining $4,000 she kept for her personal use.
Some seven years after the foreclosure and subsequent purchase by Dandy Bettis, Valda Bettis and Roseal Bettis, Jr., a minor by his next friend and mother, Mildred Bettis, filed this action on April 22, 1983, naming as defendants Dandy Bettis and Ross Bettis. Their complaint, together with the first amendment thereto, alleged that the purchase by Dandy "constitute[d] a redemption for all the joint owners of the aforesaid described real estate which includes the Plaintiffs and the Defendant Ross Bettis."
In their complaint, the plaintiffs sought an accounting for the timber cut and also sought to compel Dandy to allow them to restore their interests in the property by contributing their proportionate share toward the cost of redemption. They further alleged that the pre-foreclosure agreement "arranged and orchestrated" by Dandy "constituted a conspiracy . . . , a sham and a subterfuge to deprive Plaintiffs of their interest in said real estate . . . while both were minor children," seeking compensatory and punitive damages. A jury was demanded; however, the trial court granted the defendants' motion to strike the jury demand. The trial court also granted the defendants' motion for summary judgment eliminating the damages aspect of plaintiffs' claim, but denied the motion as to plaintiffs' continued right of redemption. Plaintiffs filed a second amendment to their complaint; however, no issues with respect to the claims and allegations asserted therein have been raised in this appeal. In due course, guardians ad litem were appointed for minor plaintiff Roseal Bettis, Jr., and minor defendant Ross Bettis, and a bench trial was held on the remaining issues. By order dated May 22, 1984, judgment was entered for the defendants. Because of its comprehensive clarity, the order of the trial court is set out in its entirety below:
"ORDER
 "This matter came on for trial on the 22nd day of May, 1984. There was an extensive stipulation of fact dictated into the record. The parties were represented by attorneys of record and Honorable Robert Thompson represented the minor, Ross Bettis.
 "Having considered the stipulation of the parties and evidence presented, the Court finds, Orders, Adjudges and Decrees as follows:
 "1. Dandy Bettis Maxwell, the defendant in this cause, was not the owner of any interest in the property at the time of the foreclosure. She was a stranger to the title. The foreclosure of the mortgage effectively extinguished all equity interest of the property, subject only to the statutory right of redemption. Subsequent to a foreclosure sale, the said Dandy Bettis Maxwell purchased the subject property from the mortgagee, who had purchased the property in at foreclosure. It is immaterial whether in doing so she was purchasing the property as a stranger to the title or redeeming the property. Under the law, she was entitled to redeem the property as the wife or widow of the decedent. Since at the time of the foreclosure she owned no interest in the *Page 850 property, she did not redeem for the benefit of all parties. (To hold that she redeemed for the benefit of all the `owners' would deprive her of any effective right of redemption, since she would acquire no interest in the property by redemption — it would all be for the benefit of others.) All other rights of redemption were extinguished if, in fact, she exercised the right of redemption, and were extinguished by the one-year statute of redemption. The Court is persuaded, however, that Dandy B. Maxwell purchased the property as a stranger to the title and obtained title to the property subject only to the statutory rights of redemption which were extinguished at the expiration of one year from foreclosure.
 "The Court specifically finds that no evidence of oppression or fraud or other matters which would give rise to an equitable action for the foreclosure sale to be set aside have been sufficiently proven to invoke equitable jurisdiction of this Court. Under such circumstances, the interest of any matters involved were subject to the statutory right of redemption of one year. While under appropriate circumstances in which fraud or oppression existed a minor might have standing for a period of two years after achieving majority for alleging fraud or oppression and, therefore, set aside a foreclosure sale, suffice it to say, that is not the allegation of this case. Accordingly, judgment is entered for the Defendant, Dandy Bettis Maxwell. Court costs are assessed against the Plaintiff. Guardian ad litem fee of $250.00 is afforded and assessed as part of court costs.
 "The Court notes that the Plaintiff did not elect to make the mortgagee a party to this litigation and did not allege fraud or oppression insofar as the mortgagee's actions are concerned. While there are cases establishing fiduciary responsibility on the part of the mortgagee, there is no case establishing fiduciary responsibility on the part of the mortgagor (or in this case, the widow of the mortgagor). In any event, there was no proof or tender of proof which would constitute fraud or oppression.
 "In order to set aside a foreclosure sale, inadequacy of sales price would have to be alleged and the [inadequacy of] price would have to be so great as to shock the conscience." (Emphasis added.)
It is from this order that plaintiffs appeal, raising basically two issues: First, was the foreclosure of the mortgage valid, and, if so, are plaintiffs entitled to redeem? Second, were plaintiffs entitled to a jury trial on the matter of a conspiracy to deprive plaintiffs of their inheritance?
 I.
In their brief and in the stipulation of facts, the plaintiffs concede that the procedure followed by the mortgagee in foreclosing the mortgage on the 80 acres technically complied with the law and "that there was no attempt by any of the parties or anyone involved in the said foreclosure sale to in any way influence the price to be bid at the said foreclosure sale, and that said foreclosure sale was open to all members of the public without restraint or duress." The plaintiffs, nevertheless, contend that the foreclosure sale is void "because of the actions of the widow in initiating the foreclosure by conspiracy with the mortgagee for the purpose of depriving her step-children of their inheritance."
In their argument, the plaintiffs imply that, because Dandy Bettis knew of their existence and could have easily ascertained their whereabouts, she was under some duty to give them actual notice of foreclosure. This claim can be characterized as a claim of fraudulent concealment or an attempt to disaffirm or have the foreclosure set aside based on fraud, as was done in the case of First National Bank of Opp v.Wise, 235 Ala. 124, 177 So. 636 (1937). Relief under either of these theories turns on the existence of some relationship or set of circumstances that gives rise to a duty. The existence of a *Page 851 
duty is a question of law for the trial court. Berkel Co.Contractors, Inc. v. Providence Hospital, 454 So.2d 496 (Ala. 1984); Hand v. Butts, 289 Ala. 653, 270 So.2d 789 (1972). As previously indicated, the trial court entered summary judgment against the plaintiffs on their conspiracy claim. We conclude that summary judgment was correct because the plaintiffs failed to prove the defendants owed them any legal duty under the circumstances.
As noted by the trial court, the plaintiffs elected not to make Baxter Dean, the mortgagee, a defendant in this case. InFirst National Bank of Opp v. Wise, supra, the widow and minor heirs of the deceased mortgagor brought an actions against themortgagee bank seeking to have a foreclosure sale, which had been held immediately after the death of the mortgagor, set aside on the basis of fraud. The Court in Wise held that, because there were circumstances creating a relation of trust and confidence between the mortgagor and mortgagee, fraudcommitted by the mortgagee in connection with the foreclosure sale would vitiate the sale in favor of the mortgagor's heirs. The Court in Wise further held:
 "In the `ordinary case,' such as Canty v. Bixler, [185 Ala. 109, 64 So. 583 (1914)], by analogy, to the time allowed for statutory redemption, the decisions fix 2 years as reasonable time for a mortgagor to elect to disaffirm the sale, and, until disaffirmed, the foreclosure stands, and cuts off the equity of redemption. Alexander v. Hill, 88 Ala. 487, 7 So. 238, 16 Am.St.Rep. 55. But as to infant heirs of the mortgagor, if the mortgagor was dead at the time the sale was made, they are, by analogy, allowed 2 years after they attain their majority, provided 2 years does not extend the time beyond 20 years from the date of the sale." (Emphasis added.) 235 Ala. at 127, 177 So. at 639.
See also Randolph v. Vails, 180 Ala. 82, 60 So. 159 (1912), in which the Court held that, where the administrator of the mortgagor's estate, together with a son and heir of the mortgagor, fraudulently conspired to procure the sale of the mortgagor's land by the mortgagee, so that they could subsequently purchase the land for less than its value, the minor heirs of the mortgagor were not barred from seeking to disaffirm the sale and to have the foreclosure sale and subsequent purchase by the administrator set aside even nine years after the sale, because the administrator was under aduty to act for the benefit of all the intestate mortgagor's heirs.
These cases are dissimilar to the case at bar in several important respects. First, this is not an action against themortgagee seeking to disaffirm the foreclosure sale. Second, the plaintiffs have stipulated that the foreclosure proceedings and sale were conducted in accordance with the law, without any undue influence, restraint, or duress. Third, the plaintiffs have failed to show, in fact or in law, that the defendant, Dandy Bettis, owed them a legal duty. In Dinkins v. Latham,202 Ala. 101, 106, 79 So. 493, 498 (1918), the Court held that "In a valid foreclosure sale under the powers contained in a mortgage, there is no field for the operation of the doctrine of disaffirmance by a minor affected thereby, and redemption must be effected within the period provided by statute." (Emphasis added.) We agree with the trial court that there is no case establishing a fiduciary responsibility on the part of a widow to her deceased husband's children by a previous marriage.
During the trial below, plaintiffs' counsel conceded that they were not attempting to establish fraud per se:
 "[PLAINTIFFS' COUNSEL]: Well, don't you believe — and I'm not saying we have alleged fraud. But don't you believe that under the pleadings the right of redemption is kind of like what you said. If it was tainted with fraud that it might extend it. I'm not saying it is. I'm not saying that at all.
 "THE COURT: I think I made the summary judgment as to the fraud aspect of the case. And I think the stipulation would rule out fraud. *Page 852 
 "[PLAINTIFFS' COUNSEL]: Well, I'm not saying it's exactly fraud. But we have got a few points that's a little, you know —
". . . .
 "[PLAINTIFFS' COUNSEL]: Your Honor, I'm not saying there's any particular fraud."
However, based on their arguments in their brief, it appears that plaintiffs may be indirectly claiming that the defendant, Dandy Bettis, committed fraud by suppressing a material fact which she was, somehow, obligated to communicate to them. Such a claim would arise under Code of 1975, § 6-5-102, which provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
In Berkel Co. Contractors, Inc. v. Providence Hospital,supra, at 505, this Court held that summary judgment was proper where the plaintiff failed to prove a duty. In so holding, this Court applied the general rules applicable under the statute with respect to silence:
 "Under § 6-5-102, mere silence is not fraud unless confidential relations or special circumstances exist; active concealment or misrepresentation must be present. Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969).
 ". . . Application of the `particular circumstances' language necessarily requires a case-by-case application of several factors.
 "`A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). . . . Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and indeed, the words of the statute itself counsel flexibility.'
 "Jim Short Ford Sales, Inc. v. Washington,384 So.2d 83, 86, 87 (Ala. 1980)."
The plaintiffs in this case have failed to prove even a scintilla of evidence that would support a finding that a confidential relationship existed between themselves and the defendants. As for any claim that the "particular circumstances" of this case warrant the imposition of a duty, we conclude the circumstances of this case do not.
The first factor, relationship of the parties, does not support a finding of a duty. There is no evidence to indicate that a relationship existed between the parties. Even though the plaintiffs were technically Dandy Bettis's step-children, there is nothing in the record to indicate that she had ever undertaken to act as their mother or even in a motherly fashion toward them to the extent that they could expect that she would look out for their interests. To the contrary, under the circumstances of this case, it may be said that the interest of Dandy Bettis is adverse to those of the plaintiffs, thereby negating any implication of a duty. See Pate v. Perry's Pride,Inc., 348 So.2d 1038 (Ala. 1977). Nor can we say the second factor, the value of the particular fact, supports a finding of a duty. There is no claim by plaintiffs that, had they been given actual notice of the foreclosure, they would have sought to purchase at the foreclosure sale or attempted to redeem the property within the requisite time. (See discussion ante.) The reasonable inference is that had it been important or valuable to the plaintiffs (or to those who were in the position to protect the plaintiffs' interests in view of their minority, such as their mother or legal guardian), to know the status of the property owned by their father at the time of his death, they would have and could have discovered that the mortgage on the 80-acre tract was being foreclosed. Furthermore, there is an absence of any evidence of any active attempts by the defendants to conceal these facts from the plaintiffs.
The final factor, the relative knowledge of the parties, may, at first glance, seem to call for a finding of a duty in view of the *Page 853 
fact that it was at Dandy's suggestion that Dean agreed to proceed with foreclosure. Nevertheless, the notice required by law to be given for foreclosure, i.e., publication for three consecutive weeks, etc., was given. In view of the stipulations agreed to by plaintiffs with respect to the propriety of the foreclosure sale, we cannot say that the superior knowledge of the defendant imposes a duty. Nor can we say that, as a matter of policy, the minority of the plaintiffs is a circumstance sufficient, in and of itself, to categorize this situation as one in which a duty should be imposed on the defendant. After all, the defendant was not acting as the administrator of Roseal Bettis's estate, nor was she in the position of an heir.[2] Furthermore, in an effort to have their interests protected, the plaintiffs or their guardian could have applied for letters of administration pursuant to Code of 1975, §43-2-40, et seq. We therefore agree with the trial court that no duty exists, and conclude that summary judgment was appropriate under any theory. That being the case, plaintiffs were not entitled to go to a jury.
 II.
Plaintiffs alternatively argue that the trial court erred in its finding that Dandy Bettis purchased as a stranger to the title. They further contend that she, in fact, redeemed the property, and that such redemption inured to the benefit of all the heirs. Thus, they assert that they are now entitled to contribute their proportionate share toward redemption.
It is axiomatic that the findings of a trial court sitting without a jury are entitled to a presumption of correctness and will not be disturbed on appeal if supported by evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous or manifestly unjust. Ala. Digest, Appealand Error, Key No. 931 (1). Our review of the record indicates that there is indeed evidence to support the trial court's finding that Dandy Bettis purchased as a stranger to the title. Aside from the fact that there is no indication that Dandy attempted to strictly comply with the redemption statutes (see §§ 6-5-234 and -235), it is significant that the deed from the mortgagee/foreclosure purchaser, Baxter Dean, to Dandy contained a clause stating that the "property herein conveyed is subject to the statutory right of redemption from foreclosure." This clause, in fact, protected the right of the plaintiffs to redeem from Dandy within one year. Because Dandy had priority of right under § 6-5-231, a redemption by Dandy would have cut off the plaintiffs' right to redeem the property.
Furthermore, the trial court correctly concluded that "[i]t is immaterial whether in doing so [Dandy] was purchasing the property as a stranger to the title or redeeming the property." Dandy argues that, because the plaintiffs stipulated she had no interest in the property, they cannot now maintain that she, in fact, redeemed the property, and claim the right to contribute. We note, however, that it is not the plaintiffs' stipulation that Dandy had no dower interest in her late husband's property that causes their theory of contribution to fail, for aproperty interest is not a requirement to the exercise of the statutory right of redemption. See Malone v. Nelson, 232 Ala. 243,167 So. 714 (1936); and Long v. King, 233 Ala. 379,171 So. 738 (1936).
While a property interest is not a prerequisite to the exercise of the statutory right of redemption, nevertheless, a property interest is a prerequisite for allowing contribution by those who were co-tenants in the property prior to foreclosure, absent some duty owed the co-tenants by the redemptioner. Only a redemption by a cotenant of the property restores legal title in favor of the other co-tenants, thereby allowing the non-redeeming co-tenants to rehabilitate their interests by contributing, within a reasonable time, their *Page 854 
proportionate share of the purchase price. The inchoate right of the non-redeeming co-tenants to contribute their proportionate share toward the cost of redemption paid by a redeeming co-tenant arises from the general rule that one co-tenant will not be permitted in equity to acquire title to the common property, solely for his or her own benefit to the exclusion of the co-tenants. See generally Dominex v. Key,456 So.2d 1047, 1060-61 (Ala. 1984), and cases cited therein; Reedv. Dunn, 392 So.2d 1173 (Ala. 1981). Thus, a redemption by Dandy Bettis would not have inured to the benefit of the heirs of Roseal Bettis, because the widow was not a co-tenant in the property with the plaintiffs prior to foreclosure.
Nor does the plaintiffs' minority at the time of the foreclosure toll the running of the time allowed by the statute for exercising their statutory right of redemption as the mortgagor's children. That time is one year under Code of 1975, § 6-5-230:
 "Where real estate, or any interest therein, is sold under execution or by virtue of any judgment in a court of competent jurisdiction or under any deed of trust or power of sale in a mortgage, the same may be redeemed by the debtor, junior mortgagee, vendee of the debtor or assignee of the equitable or statutory right of redemption, wife, widow, child, heir at law, devisee or any vendee or assignee of the right of redemption under this Code from the purchaser or his vendee within one year thereafter in the manner provided in this article."
In Mewburn v. Bass, 82 Ala. 622, 2 So. 520 (1887), cited recently in Whitson v. Baker, 463 So.2d 146, 149 (Ala. 1985), the Court held that the right to redeem "is purely a statutory right, and, to reap its benefits, it must be claimed within the two years. The three-years exceptions in favor of minors, etc., has no application to this statutory exemption."82 Ala. at 626, 2 So. at 522.
For the foregoing reasons, the judgment below is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Roseal Bettis also had an equity interest in other property mortgaged to the Alabama Exchange Bank. This mortgage was also foreclosed and Dandy Bettis purchased the property at the foreclosure sale. In the second amendment to their complaint, the plaintiffs stated a claim with respect to this property. Nevertheless, at trial the plaintiffs limited the subject matter of this suit to the 80-acre tract:
 "[PLAINTIFFS' COUNSEL]: When you say subject property you mean property to be redeemed.
"[DEFENDANTS' COUNSEL]: Subject matter of this lawsuit.
"THE COURT: Is that the 80 acres?
"[PLAINTIFFS' COUNSEL]: That's the 80 acres, Your Honor."
[2] The plaintiffs stipulated that Dandy Bettis had no dower interest or any other interest in the estate of Roseal Bettis.