[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
After The American National Bank of Union Springs ("the bank") foreclosed on several parcels of real estate that William O. Brabham, Sr., and Anne H. Brabham had given as security for a loan, William, Anne, and Robert F. Brabham, Sr., sued the bank; its president and CEO, Glen F. Davis; and its attorney and board member, Louis C. Rutland. The claims against the bank and Davis were: (1) breach of contract; (2) promissory fraud; (3) conspiracy to defraud; (4) breach of fiduciary duty; and (5) fraudulent suppression. The claims against Rutland were: (1) breach of fiduciary duty; (2) fraudulent suppression; (3) recoupment; and (4) unjust enrichment. The trial court severed the *Page 85 
claim for unjust enrichment from the Brabhams' complaint and dismissed the claim for recoupment. The bank, Davis, and Rutland moved for a summary judgment, which the court granted after a hearing. The Brabhams appeal. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
William and Anne Brabham had for several decades owned and operated a tire store in Union Springs, which their son, Robert, managed. William and Anne Brabham had, as security for a loan, given the bank a mortgage on several parcels of real estate, upon which the tire store was located. It is not clear whether Robert had assumed any of the liability represented by the mortgage; the promissory note and mortgage were in the names of William and Anne Brabham.
In June 1990, the bank restructured the loan. In the fall of 1992 and the spring of 1993, the Brabhams were continually delinquent in making payments to the bank. In April 1993, the bank notified the Brabhams that it would foreclose if they did not make all delinquent payments. The Brabhams complied with the bank's demand and avoided foreclosure. In the fall of 1993, they were again delinquent in their payments. The bank sent written notification of the delinquency to the Brabhams. On November 1, 1993, the bank notified the Brabhams that if they did not make at least two of the delinquent payments by November 5 it would foreclose; the Brabhams did not meet the November 5 deadline.
In January 1994, the bank notified the Brabhams that it would consider the debt paid in full and would not foreclose if they paid $50,000 in certified funds on or before January 31, 1994. The Brabhams did not meet this deadline, and the bank proceeded with the foreclosure. The bank, however, agreed to honor the settlement offer until the foreclosure sale, which was to be held February 28, 1994.
On the morning of February 28, 1994, the Brabhams offered the bank a $25,000 cashier's check and a $25,000 personal check. The bank did not object to the cashier's check; however, Davis informed the Brabhams that the bank would accept the personal check only if before the foreclosure sale the drawee bank assured him that the check would be honored. That same morning, the president of Community Bank and Trust of Union Springs delivered a letter to Davis that stated, in part: "Our bank will guarantee payment of a check to the American National Bank in the amount of $25,000.00 subject to the execution of certain documents expected to be signed in the afternoon of February 28th or the morning of March 1st, 1994. This transaction has been approved and will not be withdrawn." After deciding that the personal check was backed only by a conditional guarantee and did not represent certified funds, Davis refused to accept the checks, and the bank proceeded with the foreclosure sale.
Immediately before the foreclosure sale began, John Adams, a friend of Anne Brabham, approached Davis on the street outside the courthouse and allegedly stated that he would lend Anne Brabham $25,000. Davis did not view Adams's promise as a proper acceptance of the bank's settlement offer.
Rutland, acting as the bank's attorney, conducted the foreclosure sale. The bidding started at $85,450. Elizabeth Smithart bid $85,500. At some point during the final seconds of the foreclosure sale, Robert Brabham allegedly bid $87,500. Rutland refused Brabham's bid, believing it had come too late. Smithart, acting as agent for John W. Waters, purchased the property. Waters, at that time, was the probate judge-elect of Bullock County and had a nephew on the bank's board. The Brabhams later redeemed their property.
In reviewing the disposition of a motion for summary judgment, we use the same standard as the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. *Page 86 Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). This court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990). We discuss the judgment as it relates to each of the claims asserted.
 I. Breach of Contract
The Brabhams appeal regarding two claims[1] of breach of contract: (1) the bank breached the alleged settlement contract by refusing their acceptance of the settlement offer and (2) the bank breached the alleged settlement contract when Davis refused Adams's acceptance of the settlement offer made on the Brabhams' behalf. The Brabhams argue that they presented substantial evidence on each of these claims, thereby satisfying their obligation under Rule 56, Ala. R. Civ. P.
 A. The Brabhams' Alleged Acceptance
The Brabhams' first claim of breach concerns three matters: (1) the bank's refusal to accept the $50,000 when the Brabhams first tendered it; (2) the bank's refusal of the $50,000 after the drawee bank of the personal check disclosed its intentions regarding that check; and (3) whether the Brabhams' alleged acceptance constituted substantial performance.
The bank's settlement offer allowed the Brabhams to satisfy their debt by giving $50,000 in certified funds to the bank before the foreclosure sale. Because the cashier's check is not at issue, we need only determine whether the Brabhams presented substantial evidence that the personal check constituted "certified funds." At the time of this transaction, in order for a check to be "certified funds," it had to comply with §§ 7-3-410 and -411, Ala. Code 1975.[2] The Brabhams presented no evidence that the personal check constituted certified funds.
The Brabhams contend that Davis's statements following his first refusal to accept the personal check served as an oral modification of the prior settlement offer.[3] Under the terms of the alleged modification, if the drawee bank assured Davis that the personal check would be honored, then the bank would accept the check. Assuming Davis had modified the offer, the Brabhams, in order to defeat a summary judgment motion under Rule 56, were required to present substantial evidence that the drawee bank's letter provided the agreed-upon assurance. The Brabhams presented the affidavit of the drawee bank's president. In the affidavit, he stated that the letter delivered to Davis was a conditional guarantee of the personal check because the existence of the funds to honor the check was subject to the execution of certain documents. The affidavit does not present substantial evidence that the drawee bank provided the agreed-upon assurance. Rather, the bank received a conditional assurance that the check would be honored if the Brabhams executed certain loan documents.
The Brabhams argue that their presentation of the cashier's check and the personal check constituted substantial performance and, therefore, a valid acceptance of the bank's settlement offer. The bank, *Page 87 
they argue, committed a breach by refusing to cancel their debt. Substantial performance does not mean a full and exact performance in every slight and unimportant detail, but performance of all the important parts. Mac Pon Co. v. VinsantPainting Decorating Co., 423 So.2d 216 (Ala. 1982). Any question concerning substantial performance is determined according to the particular facts and circumstances of each case. Bruner v. Hines, 295 Ala. 111, 324 So.2d 265 (1975). To defeat the summary judgment motion, the Brabhams had to present substantial evidence that they had substantially performed. The terms of the offer were quite specific, and each part of the offer was important. The Brabhams had to present $50,000 in certified funds or, after the alleged modification, $25,000 in certified funds and a $25,000 personal check with the drawee bank's assurance that the check would be honored. Because the Brabhams failed to comply with all important parts of the offer, they could not have substantially performed.
 B. Adams's Alleged Acceptance on the Brabhams' Behalf
A tender of payment by a stranger to a contract is normally invalid. Brannon v. Cole, 40 Ala. App. 222, 110 So.2d 645
(1959). To defeat the summary judgment motion on the basis that Adams had accepted for them, the Brabhams had to present substantial evidence that Adams was their agent and that he had accepted the bank's offer. In an affidavit, Adams stated that immediately before the foreclosure sale he told Davis that he would lend to the Brabhams the $25,000 they needed to accept the bank's offer. The Brabhams, however, presented no evidence that Adams attempted to provide certified funds, as required by the bank's offer. The Brabhams, therefore, failed to present substantial evidence.
 II. Promissory Fraud[4]
To establish promissory fraud, a plaintiff must show: (1) that the defendant made a misrepresentation; (2) that the misrepresentation was of a material fact; (3) that the plaintiff justifiably relied upon the misrepresentation; (4) that damage or harm proximately resulted from the reliance; (5) that at the time of the misrepresentation the defendant had no intention to perform; and (6) that at the time of the misrepresentation the defendant had an intent to deceive.Pinyan v. Community Bank, 644 So.2d 919, 923 (Ala. 1994). The defendant's intent to deceive can be established through circumstantial evidence, but that evidence must be of such quality that a reasonable person may fairly and reasonably infer the ultimate fact to be proved. Id., at 924.
The bank extended to the Brabhams a settlement offer that could be accepted only by their tendering $50,000 in certified funds before the foreclosure sale. As we have already determined, the Brabhams failed to present substantial evidence that they accepted the offer. Because the Brabhams never properly accepted the bank's offer, the bank was under no obligation to perform. It appears, therefore, that any damage the Brabhams may have suffered resulted from their failure to accept properly the bank's settlement offer, rather than from any fraud on the bank's part. Accordingly, the Brabhams could not have produced substantial evidence of proximate cause in their claim of promissory fraud. We note that although the Brabhams make numerous speculative references concerning alleged circumstantial evidence to support their contentions regarding this claim, they fail in almost every instance to refer this court to portions of the record supporting these references.
 III. Breach of Fiduciary Duty
The Brabhams contend that the activities of the bank, Davis, and Rutland relating to the events before, after, and during the foreclosure sale constituted breaches of the fiduciary duty owed them. Specifically, the Brabhams argue that each of the following acts constitutes a breach: (1) the bank's refusal to treat the Brabhams' tender or *Page 88 
what they call their substantial performance as a valid acceptance of its settlement offer; (2) Davis's refusal to treat Adams's promise as a valid acceptance of the bank's settlement offer; (3) Rutland's improper contact before the foreclosure sale with the ultimate purchaser of the property; (4) Rutland's refusal to accept Robert Brabham's bid at the foreclosure sale; and (5) the refusal of the bank, Davis, and Rutland to provide the Brabhams with an accounting of the expenses and costs associated with the foreclosure sale. The Brabhams argue that they presented substantial evidence indicating that these acts were breaches of the fiduciary duty.
The Brabhams base their argument upon statements contained inAmes v. Pardue, 389 So.2d 927 (Ala. 1980), and Wood RiverDevelopment, Inc. v. Armbrester, 547 So.2d 844 (Ala. 1989). In each of these cases, the supreme court stated that a mortgagee occupies a position similar to that of a trustee and owes a duty of good faith and fairness when executing the provisions of a mortgage. Ames, supra, at 931; Wood River, supra, at 847. The gist of the Brabhams' argument is that the supreme court has tacitly recognized that a mortgagee owes a fiduciary duty to a mortgagor. We do not agree.
Ames, supra, is part of a line of cases that discuss the application of the good faith standard to the mortgagee's power of sale. In particular, those cases address whether the purchase price at the foreclosure sale is so inadequate as to constitute bad faith and whether the manner in which the mortgagee sold the property was appropriate (e. g., whether the property was sold en masse or by parcel or tract). See Dozierv. Farrior, 187 Ala. 181, 65 So. 364 (1914); Bank of NewBrockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920); Haydenv. Smith, 216 Ala. 428, 113 So. 293 (1927); Kelly v.Carmichael, 217 Ala. 534, 117 So. 67 (1928); First NationalBank v. Wise, 235 Ala. 124, 177 So. 636 (1937); J.H. Morris,Inc. v. Indian Hills, Inc., 282 Ala. 443, 212 So.2d 831 (1968). A review of these cases leads us to conclude that the duty a mortgagee owes a mortgagor in a foreclosure proceeding is one of good faith and fairness, not a general fiduciary duty. The description of a mortgagee as, "in a sense, a trustee," J.H.Morris, Inc., supra, or as a "quasme duties that a trustee owes a trust beneficiary. We also note that Wood River, supra, deals with a judicial sale, not a foreclosure sale.
 A. The Brabhams' Alleged Acceptance
Based on the foregoing discussion and our conclusion regarding the Brabhams' alleged acceptance of the bank's settlement offer and Adams's alleged acceptance on their behalf, we conclude that the Brabhams did not present substantial evidence that the bank or Davis violated the duty of good faith in that regard.
 B. Rutland's Contact with the Purchaser Before the Sale
The Brabhams contend that Rutland's cotact with the ultimate purchaser of the property, before the foreclosure sale, was a breach of the alleged fiduciary duty owed to them. Our conclusion above makes unnecessary any discussion of the existence of a fiduciary duty. We also note that the Brabhams failed to present substantial evidence that this alleged contact constituted a breach of good faith.
 C. Rutland's Refusal to Accept Robert Brabham's Bid
The Brabhams contend that Rutland, acting as the bank's agent, violated the alleged fiduciary duty by refusing to accept Robert Brabham's bid at the foreclosure sale. Because of our conclusion regarding the claim of a fiduciary duty, we need not address this contention. However, because the Brabhams' brief in opposition to the motion for summary judgment and their appellate brief contend that Rutland's activity violated the duty of good faith, we will examine whether they presented substantial evidence in that regard.
A mortgagee may not act in a way that is calculated to discourage free, competitive bidding at a foreclosure sale; such conduct is a breach of good faith. De *Page 89 Moville v. Merchants Farmers Bank of Greene County, 233 Ala. 204,170 So. 756 (1936). A mortgagee is not obligated to accept every bid; rather, it may exercise discretion. 59 C.J.S.Mortgages § 578 (1949).
The record reveals that after the high bid was made, Rutland asked if there were any other bids. He went so far as to ask one person at the sale if he would like to bid higher. The Brabhams' deposition testimony reveals only that at some point between Rutland's words "going twice" and "sold" Robert Brabham bid $87,500. The Brabhams failed to present substantial evidence that Rutland sought to discourage free, competitive bidding and thereby abused his discretion.
 D. Failure to Provide an Accounting
The Brabhams contend that the bank, Davis, and Rutland breached a fiduciary duty to provide them with an accounting of the costs and expenses associated with the foreclosure sale. Our conclusion above makes unnecessary any discussion of the existence of a fiduciary duty in this regard. We note that § 6-5-252, Ala. Code 1975, provides, in part:
 "Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her."
(Emphasis added.) The Brabhams, therefore, were entitled to an accounting from the purchaser at the foreclosure sale, but not from the bank, Davis, or Rutland. The bank, Davis, and Rutland were entitled to a judgment as a matter of law on this claim.
 IV. Fraudulent Suppression
The Brabhams' complaint alleged that the refusal of the bank, Davis, and Rutland to furnish an accounting constituted fraudulent suppression. Fraudulent suppression is: (1) the suppression of a material fact; (2) by a person who is under a duty to communicate that fact; (3) because of a confidential relationship or the circumstances of the case. To be actionable, that suppression must cause injury as a proximate consequence. § 6-5-102, Ala. Code 1975; Crowder v. Memory HillGardens, Inc., 516 So.2d 602 (Ala. 1987). As previously discussed, the bank, Davis, and Rutland did not owe a duty to provide an accounting. The bank, Davis, and Rutland were entitled, therefore, to a judgment as a matter of law on the fraudulent suppression claim.
 Conclusion
The court properly entered the summary judgment in favor of the bank, Davis, and Rutland on all claims asserted in the Brabhams' complaint.
AFFIRMED.
CRAWLEY, J., concurs.
ROBERTSON, P.J., concurs in the result.
[1] The Brabhams also argue that the court erred in entering the summary judgment as to a third breach of contract claim, in which they asserted that the bank misapplied the foreclosure sale proceeds. Because of noncompliance with Rule 28, Ala. R.App. P., we do not address this contention.
[2] Sections 7-3-410 and -111 were repealed by Ala. Acts 1995, Act No. 95-668, and were replaced by § 7-3-409, Ala. Code (Supp. 1995).
[3] The Brabhams also contend that the Bank's modification of the settlement offer served as a waiver of any objection to the personal check. The Bank, they argue, is estopped from denying the sufficiency of the Brabhams' acceptance and that the summary judgment was, therefore, improper. Pursuant to Rule 28, Ala. R.App. P., we need not address this contention.
[4] The Brabhams contend that the Bank, Davis, and Rutland conspired to defraud them; the Brabhams, however, cite no relevant authority supporting their argument that the court erred in entering the summary judgment on this conspiracy claim. Pursuant to Rule 28, Ala. R. App. P., we do not address this contention.