THOMPSON, Presiding Judge.
On June 16, 2015, Citizens Bank and Trust ("Citizens") filed an unlawful-detainer action against Danny R. Tidmore in the Marshall District Court. On July 14, 2015, the action was transferred to the Marshall Circuit Court ("the trial court"), and Citizens amended its complaint, asserting an ejectment claim and seeking to recover on several promissory notes between Citizens and Tidmore. Citizens based its ejectment claim on its assertion that it was entitled to possession of certain property ("the property") by virtue of its recent foreclosure on a mortgage on the property executed by Tidmore and its purchase of the property at the foreclosure sale. Tidmore answered and counterclaimed, seeking both declaratory relief and seeking to recover monetary damages on claims asserting, among other things, negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, "placed in false light," defamation, slander, libel, unfair and deceptive trade practices, and breach of the covenant of good faith and fair dealing.
On September 21, 2015, Citizens moved the trial court for an order awarding it possession of the property. On October 9, 2015, the trial court conducted a hearing on that request. Thereafter, on October 22, 2015, the trial court entered an order determining that Citizens was entitled to a writ of possession to the property. The trial court specified in that order that the parties' remaining claims would be heard at a later hearing. On November 4, 2015, Tidmore appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975. Citizens sought to dismiss that appeal, and the parties argued the issue whether the trial court had entered an order that constituted a preliminary injunction. On June 30, *580 2016, this court, assuming, based on the positions of the parties, that the order was one granting a preliminary injunction, dismissed the appeal because a final judgment had subsequently been entered in the action. See Evans v. Cumberland Lake Country Club,Inc., 682 So.2d 11, 13 (Ala. 1996) (an appeal of a preliminary injunction was moot when the trial court entered a later, permanent injunction); and Gulf House Ass'n, Inc. v.Town of Gulf Shores, 484 So.2d 1061, 1064 (Ala. 1985) ("Whether or not the trial court erred in denying the preliminary injunction is moot, because there has been a final decision on the merits which denied the permanent injunction.").
While the appeal of the October 22, 2015, order was pending, Citizens moved for a summary judgment on all claims, and Tidmore opposed that motion. On May 2, 2016, the trial court purported to enter a summary judgment in favor of Citizens on all of the parties' claims and awarded Citizens monetary damages constituting principal and interest on the various outstanding loans Tidmore had obtained from Citizens. Tidmore filed a purported postjudgment motion, which the trial court denied. Tidmore timely appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975.
Initially, we note that because Tidmore's appeal of the October 22, 2015, order was pending in this court until June 30, 2016, the trial court lacked jurisdiction to enter its May 2, 2016, summary judgment. See Landry v. Landry, 91 So.3d 88, 89 (Ala. Civ. App. 2012) (jurisdiction can be in only one court at a time); and Johnson v. Willis, 893 So.2d 1138, 1141 (Ala. 2004) (" '[W]hile an appeal is pending, the trial court "can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court." ' " (quoting Reynolds v. Colonial Bank, 874 So.2d 497, 503 (Ala. 2003), quoting in turn Foster v. Greer & Sons, Inc., 446 So.2d 605, 608 (Ala. 1984) )). Accordingly, upon submission, this court entered an order reinvesting the trial court with jurisdiction to reenter its summary judgment. The trial court did so on April 20, 2017, and Tidmore's appeal then became effective. Rule 4(a)(4), Ala. R. App. P.; Hendricks v. KW Plastics, Inc., 5 So.3d 1289, 1290 (Ala. Civ. App. 2008).
The record indicates that on July 5, 2012, Tidmore and his former wife obtained a loan from Citizens that was secured by a mortgage on property that included the house in which the Tidmores resided. (Tidmore and his wife divorced, and Tidmore was awarded the house and the property, subject to its indebtedness; Citizens filed its ejectment action against only Tidmore.) The amount of the loan was $70,755.22, and it was evidenced by a "balloon note" payable over 85 months.
In the spring of 2013, Tidmore began having financial difficulties and did not remain current on his mortgage payments. Tidmore and Rick Malone, the Citizens loan officer, had several discussions regarding the late or missed payments. Malone stated that, at one point, Tidmore anticipated using the proceeds of the settlement he received, or would receive, from a legal action to catch up the mortgage payments, but, Malone stated, Tidmore later informed him that he could not do so because he had not received as large a settlement from that legal action as he had anticipated. At the October 9, 2015, hearing on Citizens's request for possession of the property, Tidmore disputed that he was behind in his payments to Citizens in the fall of 2014, although documents submitted by Citizens showed payments credited toward Tidmore's account a month to several months after their due *581 dates. Regardless, it is undisputed that in October 2014 Tidmore made a payment to Citizens that was credited, except for $7.65, to his past-due September 2014 mortgage payment and that Tidmore made no further payments toward the mortgage indebtedness after that date. The trial court noted in its May 20, 2016, judgment in this matter, which, as noted, was reentered on April 20, 2017, that Tidmore had failed to make any payment toward the mortgage indebtedness in more than one year.
Tidmore filed for bankruptcy protection on November 24, 2014, but that action was dismissed on January 21, 2015, because of Tidmore's noncompliance with the bankruptcy plan. On February 10, 2015, Citizens notified Tidmore by letter that the mortgage loan was in default and that his failure to cure the default within ten days might result in the acceleration of the mortgage indebtedness. That letter asked Tidmore to contact Citizens for a determination of the amount necessary to pay the mortgage indebtedness in full. Attached to that letter was a "statement in compliance with the Fair Debt Collection Practices Act," see 15 U.S.C. § 1692 et seq., that set forth the amount of the original mortgage and the amounts necessary to pay the past-due amounts.
By letter dated March 3, 2015, Citizens notified Tidmore that it had elected to accelerate the mortgage indebtedness and of its intent to foreclose on the property pursuant to the mortgage contract by a foreclosure sale scheduled for March 31, 2015.
Tidmore again filed for bankruptcy protection on March 31, 2015, and that action was dismissed, again for noncompliance with the bankruptcy plan, on April 15, 2015. On April 17, 2015, Citizens again notified Tidmore of its acceleration of the mortgage indebtedness and that a foreclosure sale was scheduled for May 26, 2015. The foreclosure sale was conducted on May 26, 2015, and Citizens purchased the property for $48,839.25. The mortgage and the foreclosure deed described the foreclosed property as comprising "Lots 5, 6, 7, 8, 9, 10, 11 and 12 in the Elmer Miller Addition to the City of Albertville, Alabama." On May 26, 2015, Citizens notified Tidmore by letter of its foreclosure and its purchase of the property, and it demanded possession of the property.
Also on May 26, 2015, Tidmore filed for bankruptcy protection for a third time. That third bankruptcy action was dismissed on June 10, 2015. Citizens argued to the trial court that Tidmore's third bankruptcy filing within a six-month-period did not operate to stay the foreclosure sale. See 11 U.S.C. § 362(c)(4)(A)(i).
We note that in 2012 and 2013, Tidmore also obtained four loans from Citizens other than the mortgage loan. Three of those four loans were secured by various vehicles he owned; the other loan appears to be a signature loan. Tidmore defaulted on each of the other four loans. Citizens's amended complaint in this action sought an award of damages related to each of those loans. The trial court's judgment awards Citizens monetary damages based on its finding that Tidmore owed Citizens on five outstanding "notes" and that "the total outstanding principal and interest owed to [Citizens] from [Tidmore] as of April 21, 2016, is $48,617.94." Tidmore has not challenged the amount of that damages award, nor has he argued that he cannot determine the amount to which Citizens might be entitled in reference to only the mortgage indebtedness. The other loans are not at issue in this appeal, and, therefore, we do not set forth detailed facts pertaining to those loans.
However, we note that Citizens sought possession of the property during the pendency *582 of the action below because, it alleged, Tidmore had damaged some collateral that secured two of the other four loans it had made to Tidmore. During the October 9, 2015, hearing on Citizens's motion seeking possession of the property, Citizens presented ore tenus and photographic evidence tending to indicate that Tidmore had damaged or destroyed two vehicles that secured at least two of those loans. Tidmore denied that he had intentionally damaged those vehicles, and he stated that he had taken the vehicles apart for repairs but no longer knew where many of the parts for those vehicles were located. Citizens argued that evidence supported its concern that Tidmore would damage the house on the property if he were allowed to remain in that house during the pendency of the action below and any appeal that might follow. In its October 22, 2015, order, the trial court awarded Citizens possession of the property, specifically finding, among other things, that Tidmore "has willfully destroyed property, being two trucks, covered in separate notes with" Citizens.
Initially, we note that " '[n]ot all irregularities in the foreclosure process, but only those irregularities that would render the foreclosure sale void, may be raised as affirmative defenses to an ejectment action.' " Pittman v. Regions Bank, 226 So.3d 193 (Ala. Civ. App. 2016) (quoting Campbell v. Bank of America, N.A., 141 So.3d 492, 499 (Ala. Civ. App. 2012) ). Among those irregularities are the following issues raised by Tidmore. See, generally, Pittman v. Regions Bank, supra (discussing the irregularities that will void a foreclosure sale).
Tidmore argues that Citizens did not provide him proper notice of "assignment as well as default and acceleration" under the terms of the mortgage contract. First, we note that there was no assignment of the mortgage contract, because it is undisputed that Citizens provided the mortgage loan, serviced that loan, and foreclosed based on that loan. Further, Tidmore made no argument concerning an assignment, or lack of notice of any assignment, before the trial court, and, therefore, to the extent he makes an argument concerning an assignment of the mortgage, he is impermissibly raising the issue for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) ("This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.").
Tidmore next argues that Citizens did not provide him with proper notice of the acceleration of the loan and of its intent to foreclose. Tidmore cites Pittman v. Regions Bank, supra, for the proposition that a party who has breached a contract cannot take advantage of that failure. That case, however, involved a dispute concerning a home builder and a homeowner, and it addressed a breach-of-contract claim. Tidmore does not explain how that case applies in the context of whether he received proper notice under the mortgage contract between the parties. Rather, he contends that if one party breaches a contract, the other may be excused from performance under the contract. See Baldwin v. Panetta, 4 So.3d 555, 562 (Ala. Civ. App. 2008). It appears that Tidmore is maintaining that Citizens's purported failure to provide proper notice of the acceleration of the mortgage loan and the foreclosure operated to excuse him from making the payments on the mortgage indebtedness that resulted in the acceleration and foreclosure. However, if Baldwin v. Panetta, supra, could be said to apply in this case, it would be for the proposition that Tidmore's failure to make payments on the *583 mortgage indebtedness would operate to excuse Citizens's performance under the mortgage contract.[1]
Tidmore also cites Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168 (Ala. 2012), in which the Jacksons had sued Wells Fargo on several claims, including breach of contract, related to Wells Fargo's foreclosure on a mortgage contract. In that case, our supreme court held that the trial court had erred in entering a summary judgment in favor of Wells Fargo on the Jacksons' breach-of-contract claim because the mortgage contract had required Wells Fargo to provide both notice that it was considering accelerating the loan "in 'not less than 30 days,'" and of its intent to foreclose, but Wells Fargo had failed to present evidence that it had provided notice to the Jacksons that it was considering accelerating the loan. 90 So.3d at 173. In so holding, the court stated, "Under the language of this mortgage, without proper notice of intent to accelerate, acceleration fails and, consequently, so does the foreclosure sale" 90 So.3d at 173. Tidmore argues summarily that, based on that quoted language, the foreclosure sale in this case is invalid based on Citizens's failure to provide notice of its intent to accelerate. That argument fails for two reasons.
First, the issue in Jackson v. Wells Fargo was the propriety of a summary judgment on a breach-of-contract claim and not the validity of the underlying foreclosure sale, as is at issue here. Further, the mortgage contract at issue here provides that, "if permitted by law, I [ (Tidmore) ] waive any otherwise required notice of: presentment; demand; acceleration; and intent to accelerate," but then contains a provision stating:
"Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under the section titled Transfer of the Property or a Beneficial Interest In Borrower, unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than the minimum number of days established by Applicable Law from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. To the extent permitted by law, the notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. To the extent permitted by law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including but not limited to, reasonable attorneys' fees and costs of title evidence.
"If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in the section titled Notices. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Marshall County, Alabama, *584 and thereupon, shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."
Tidmore contends in his brief on appeal that Citizens provided no notice that complied with the mortgage contract, but he fails to identify any language from that mortgage contract with which he contends Citizens failed to comply. It appears that Tidmore is arguing that Citizens did not provide him any notice of its intent to accelerate. However, the record indicates that Citizens sent a letter to Tidmore dated February 10, 2015, in which it notified Tidmore that it was considering accelerating the mortgage loan.[2] Tidmore contends in his appellate brief that Citizens conceded that the notice contained in the February 10, 2015, letter was not sufficient. He cites to his questioning of Malone during the October 9, 2015, hearing on Citizens's request for possession of the property. During that questioning, Tidmore asked only if the February 10, 2015, letter notified Tidmore that he could file a legal action to contest Citizens's consideration of its right to accelerate the loan. Malone, however, agreed only that he believed that the February 10, 2015, letter was sufficient.[3]
The February 10, 2015, letter notified Tidmore that Citizens was considering accelerating the note if Tidmore did not bring the loan indebtedness current. Attached to that letter was a statement of the amounts due under the note and the amount of the arrearage.[4] Tidmore has not *585 identified in his brief submitted to this court any specific omissions by Citizens that, he contends, should have been included in the February 10, 2015, notice. It is not the function of this court to create an argument or perform legal research on behalf of an appellant. Ex parte Borden, 60 So.3d 940, 943 (Ala. 2007). Even assuming that Citizens did fail to include some part of the required notice, this court has stated:
"Alabama law is clear that errors in the notice that do not prejudice the mortgagor will not invalidate an otherwise valid foreclosure sale. See, e.g., Drake v. Rhodes, 155 Ala. 498, 46 So. 769 (1908) (transposition of mortgagor's initials did not prejudice mortgagor); Richards v. Phillips, 925 So.2d 216 (Ala. Civ. App. 2005) (inaccurate statement in preamble of notice that property was located in Shelby County did not prejudice mortgagor because legal description of property in notice accurately stated that property was located in Chilton County); and Farmers' Sav. Bank v. Murphree, 200 Ala. 574, 76 So. 932 (1917) (failure to specify in notice that foreclosure sale would be for cash did not prejudice mortgagor because, although the sale was made for cash, an extension of credit to purchasers would tend to attract more bidders)."
Perry v. Federal Nat'l Mortg. Ass'n, 100 So.3d 1090, 1099 (Ala. Civ. App. 2012). We cannot say that Tidmore has demonstrated that the trial court erred in entering the summary judgment based on his argument that notice was not sufficient.
Tidmore also argues that Citizens breached a "fiduciary duty" owed to him in its foreclosure sale of the property. Tidmore relies on the following language in Ames v. Pardue, 389 So.2d 927, 931 (Ala. 1980) : "A power of sale is more than a mere clause in a legal contract and equity regards a mortgagee holding a power of sale as a quasi trustee with a duty of fairness and good faith to the mortgagor in its execution." Tidmore is incorrect that Citizens owed him a "fiduciary duty"; instead, Citizens was required to deal in good faith. Our supreme court has explained:
" Ames [v. Pardue, 389 So.2d 927 (Ala. 1980),] is part of a line of cases that discuss the application of the good faith standard to the mortgagee's power of sale. In particular, those cases address whether the purchase price at the foreclosure sale is so inadequate as to constitute bad faith and whether the manner in which the mortgagee sold the property was appropriate (e.g., whether the property was sold en masse or by parcel or tract). See Dozier v. Farrior, 187 Ala. 181, 65 So. 364 (1914) ; Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920) ; Hayden v. Smith, 216 Ala. 428, 113 So. 293 (1927) ; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928) ; First National Bank v. Wise, 235 Ala. 124, 177 So. 636 (1937) ; J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 212 So.2d 831 (1968). A review of these cases leads us to conclude that the duty a mortgagee owes a mortgagor in a foreclosure proceeding is one of good faith and fairness, not a general fiduciary duty. The description of a mortgagee *586 as, 'in a sense, a trustee,' J.H. Morris, Inc., supra, or as a 'quasi-trustee,' Ames, supra, should not be taken to mean that a mortgagee owes a mortgagor all the same duties that a trustee owes a trust beneficiary."
Brabham v. American Nat'l Bank of Union Springs, 689 So.2d 82, 88 (Ala. Civ. App. 1996) (emphasis added).
Accordingly, we address Tidmore's "fiduciary duty" argument as an argument that the trial court erred in determining that Citizens acted in good faith in selling the property at issue as one parcel. Brabham v. American Nat'l Bank of Union Springs, supra.
Tidmore contends that because the deed lists the property as comprising eight lots that are each taxed separately, Citizens was required to sell the property as separate parcels, apparently in order to obtain a higher sale price for the property. Tidmore relies on language from Ames, supra, in which the court noted that if the mortgagor requests that the land be sold in parcels rather than en masse, the bank should consider that request. Ames v. Pardue, 389 So.2d at 932. In this case, however, there is no indication that, before Citizens conducted the foreclosure sale of the property, Tidmore had asked Citizens to sell the property as separate lots. See Dixon v. Farm Credit Bank of Texas, 689 So.2d 135, 137 (Ala. Civ. App. 1996) (affirming a summary judgment in favor of a lender when the borrower had not asked, before the foreclosure sale, that the property be divided before the sale to allow either a greater purchase price or the opportunity to redeem a portion of the property).
Out of an abundance of caution, we note that, even if Tidmore had asked that the property be sold in separate lots before the foreclosure sale was conducted, we could not say that Tidmore has demonstrated error in this case. In Garris v. Federal Land Bank of Jackson, 584 So.2d 791 (Ala. 1991), the Garrises owned a large parcel of property and had mortgaged 458 acres of that property, which was "described as several separately owned parcels of property." Garris, 584 So.2d at 792. Among the "separately owned parcels of property" were a 365-acre parcel referred to as "the river property," and several other parcels totaling 93 acres.[5] The Garrises mortgaged the 458-acre property to the Federal Land Bank of Jackson, and they subsequently defaulted and the bank foreclosed on the entire 458 acres. In their amended complaint asserting a number of claims against the bank related to that foreclosure, the Garrises argued that the bank had failed to obtain the highest price for the property when it sold it en masse as opposed to offering the separate parcels for sale. The bank moved to dismiss the amended complaint, and the trial court granted that motion. On appeal, our supreme court reversed that dismissal, concluding that the Garrises' claim that the bank should not have sold the property en masse should go forward. In doing so, the supreme court stated:
"This Court recognizes the rule stated in George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala. 1986) :
" ' "It is the rule in Alabama that a mortgagee is responsible to the mortgagor for the fairness of the manner of the foreclosure sale. If the property concerned consists of separate parcels which are dedicated to separate and distinct uses, the parcels should be offered separately first in order to obtain the highest possible price for the property and to give the mortgagor a chance to retain some of his *587 property. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 (1914).
" ' "This rule applies if the property covered by the mortgage is separated into distinct parcels either by natural boundaries, by the way in which it is platted, or by the fact that the parcels are not contiguous. Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928).
" ' "A foreclosure sale held under a power of sale may be set aside under this rule. Dozier v. Farrior, supra. A power of sale is more than a mere clause in a legal contract and equity regards a mortgagee holding a power of sale as a quasi trustee with a duty of good faith to the mortgagor in its execution. Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105 (1920). To void the foreclosure sale, the mortgagor must show that the trust imposed on the mortgagee has been abused and that he has been injured by the sale. Rudisill v. Buckner, 244 Ala. 653, 656, 15 So.2d 333 (1943).
" ' "A mortgagee's equitable duty to offer first by parcels cannot be abrogated by a general provision of the power of sale giving the mortgagee discretion to hold a sale 'when, as and where it shall seem best to them.' Bank of New Brockton v. Dunnavant, supra, 204 Ala. at 639, 87 So. at 106."'
" 501 So.2d at 436, quoting Ames v. Pardue, 389 So.2d 927, 930-31 (Ala. 1980). (Emphasis added in George.)"
Garris v. Federal Land Bank of Jackson, 584 So.2d at 793-94.
We note that this case, unlike Garris, supra, involves a question concerning the sufficiency of the evidence with regard to a summary-judgment motion. In Dixon v. Farm Credit Bank of Texas, supra, the trial court entered a summary judgment in favor of Farm Credit Bank of Texas on the Dixons' claims that the bank had improperly foreclosed on their 295-acre parcel of property without dividing the property into parcels for sale. Our supreme court stated:
"The Bank contends that the foreclosure sale was properly conducted and that the trial court properly entered the summary judgment. We agree.
"The trial court noted that, according to Ames [v. Pardue, 389 So.2d 927 (Ala. 1980) ], before the Dixons can have the foreclosure sale voided, they must show that the trust imposed on the mortgagee has been abused and that they have been injured by the sale. The Bank points out that Alabama follows the general rule that 'the mortgagee, or those standing in his right, ordinarily, may sell the property as described in the mortgage.' Kelly v. Carmichael, 217 Ala. 534, 538, 117 So. 67, 71 (1928). As the trial court found, the subject property 'was mortgaged as a single tract described by metes and bounds and title was so held by the Plaintiffs individually and as husband and wife.' Our supreme court has found exceptions to the general rule, but those cases applying exceptions involve platted subdivisions expressly recognized in the mortgage, separate and distinct lots or parcels, or a suggestion of fraudulent or abusive conduct on the part of the mortgagee against one who owned a small portion of a much larger piece of property. See, e.g., Garris v. Federal Land Bank of Jackson, 584 So.2d 791 (Ala. 1991) ; George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala. 1986) ; Conway v. Andrews, 286 Ala. 28, 236 So.2d 687 (1970) ; Kelly, 217 Ala. at 538, 117 So. at 71.
"Furthermore, as the trial court stated in its well-reasoned and thorough opinion, the Dixons offered only speculation *588 as to how the property should have been divided into parcels for sale...."
689 So.2d at 137. In Dixon, supra, the evidence indicated that the property had not been divided into parcels, and our supreme court quoted with approval the trial court's determination that a "[t]his Court does not believe that these facts obligate a mortgagee of a single farm tract, described and owned as a single tract, to speculate on how the single tract might be divided into various parcels for sale.'" 689 So.2d at 138. The supreme court held that because the Dixons, who had attended the foreclosure sale, had failed to object to the manner in which the sale was conducted, the Dixons were estopped from objecting to the sale of the property in one parcel.
Tidmore also relies on Hawkins v. LaSalle Bank, N.A., 24 So.3d 1143 (Ala. Civ. App. 2009), in which three separate noncontiguous parcels were foreclosed on, and, among other things, this court considered whether the trial court had properly rejected Hawkins's claim that the three parcels should have been sold separately rather than en masse. This court reversed, agreeing with Hawkins that the en masse sale had prevented him the opportunity of redeeming the one parcel on which he resided. This court stated, in pertinent part:
" 'The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain. When a sale and purchase en masse are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, by seasonable action, have the sale annulled. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 [ (1914) ]. ' "
Hawkins v. LaSalle Bank, N.A., 24 So.3d at 1148 (overruled on other grounds by Berry v. Deutsche Bank Nat'l. Trust Co., 57 So.3d 142 (Ala. Civ. App. 2010), and quoting J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So.2d 831, 843 (1968) ).[6]
Tidmore points out that the deed to the property subject to the mortgage, and on which Citizens foreclosed, relates to eight separate lots, referenced in the deed as "Lots 5, 6, 7, 8, 9, 10, 11 and 12 in the Elmer Miller Addition to the City of Albertville, Alabama." However, Tidmore did not present any evidence indicating that any of the lots that compose the parcel of property on which Citizens foreclosed were " 'separate parcels which are [or could be] dedicated to separate and distinct uses.' " Garris v. Federal Land Bank of Jackson, 584 So.2d at 793 (quoting George v. Federal Land Bank of Jackson, 501 So.2d 432, 436 (Ala. 1986) ); Hawkins, supra. The aerial tax map of the property at issue clearly demonstrates that lots 5, 6, 7, 8, 9, and 10 are long, narrow, contiguous lots. One building, Tidmore's house, is constructed across lots 5, 6, 7, and 8, and what appears to be an access road and a building are on lot 9 and encroach slightly onto lot 10.[7] Lot *589 11 is a triangular-shaped lot that abuts lot 10, and lot 12 is an irregularly shaped lot that runs behind lots 5, 6, 7, 8, 9, and 10. The tax map does not indicate that there are structures on lots 11 and 12. The tax map shows that other property owners have constructed houses near Tidmore's house, and that those houses also cross several "lots" of property.
Tidmore argues only that Citizens should have sold all the lots separately; he does not specifically contend that, by selling only lots 11 or 12 (the only lots without improvements), Citizens could have obtained a higher sales price that might have allowed him to redeem the property on which his house is located. In response to Citizens's properly supported summary-judgment motion, Tidmore did not submit any evidence regarding the size of the lots on which no structures are located, the feasibility of selling those lots separately from those on which the house is constructed, or how dividing those lots from the ones on which the house is constructed would impact the values or selling prices of any of the lots.
" Rule 56, A[la]. R. Civ. P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985) ; Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the 'substantial evidence rule' ( § 12-21-12, Ala. Code 1975 ), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the [nonmovant] must present 'substantial evidence,' i.e., 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Garris v. A & M Forest Consultants, Inc., 623 So.2d 1035, 1039 (Ala. 1993).
With regard to this issue, Tidmore has failed to submit evidence that raises a material issue of fact as to whether the "lots" that compose the property could have been sold separately in the foreclosure sale.
Tidmore also argues that Citizens breached its duty to exercise good faith by failing to obtain the "best price" for the property at the foreclosure sale. Tidmore contends that Citizens "underbid" in purchasing the property. The evidence indicates that, in 2012, Tidmore mortgaged the property for $70,755.22 and that Citizens purchased the property for $48,839.25 in 2015. Malone testified at the October 9, 2015, hearing on Citizens's request for possession of the property that Tidmore had not allowed him to inspect the inside of the house before the foreclosure sale and that he and another Citizens employee had estimated the value of the property based on their visit to the property, during which they discovered the two vehicles that had been collateral for other loans dismantled, with pieces of those vehicles in the yard of the property. Tidmore offered no evidence concerning the value of the property at the time of the foreclosure sale.
*590 Our courts have held that a foreclosure sale may be invalidated if the price for which property is sold at the foreclosure sale is " ' "so inadequate as to shock the conscience, [and, thus,] may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside." ' " Campbell v. Bank of America, N.A., 141 So.3d at 496 (quoting Hayden v. Smith, 216 Ala. 428, 430, 113 So. 293, 295 (1927) ). See also Berry v. Deutsche Bank Nat'l Trust Co., 57 So.3d 142, 148 (Ala. Civ. App. 2010) (same).
In Mt. Carmel Estates v. Regions Bank, 853 So.2d 160, 168 (Ala. 2002), cited by Tidmore in his appellate brief, our supreme court affirmed a judgment in favor of a bank that had paid $1,242,000 at a foreclosure sale for property that, two weeks after that foreclosure sale, was appraised for $1,530,000. Our supreme court held that that sale price was not so inadequate as to shock the conscience. Id.
In this case, Tidmore merely asserts that the foreclosure sale price is "unreasonable and unfair." Tidmore did not present any evidence regarding any method of valuing the property, i.e., he did not present evidence of an appraisal or even the tax valuation of the property. Tidmore does not even argue on appeal, as he did before the trial court, that the foreclosure sale price should be compared to the price for which he mortgaged the property;[8] we note that if such a comparison is made, the foreclosure sale price was 69% of the original amount of the loan. Accordingly, we cannot say that Tidmore has demonstrated that the trial court erred in refusing to invalidate the foreclosure on the basis that the amount paid at the foreclosure sale was inadequate in relation to the value of the property.
Tidmore also argues that the trial court erred in entering a summary judgment in favor of Citizens on several of his counterclaims. Tidmore first asserts that the trial court erred in denying his breach-of-contract counterclaim. He again relies on Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168, (Ala. 2012), but, instead of arguing the merits of his breach-of-contract counterclaim, Tidmore again contends that the foreclosure sale was invalid. Even interpreting the argument as one asserting that the trial court improperly ruled on his breach-of-contract counterclaim, Tidmore bases his argument on his contention that Citizens did not send a notice of its intent to accelerate the mortgage loan. However, the record contains the February 10, 2015, letter from Citizens setting forth such an intent.
Further, as Tidmore points out, the elements of a breach-of-contract claim in Alabama are " ' "[ (1) ]the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." ' " Poole v. Prince, 61 So.3d 258, 273 (Ala. 2010) (quoting Prince v. Poole, 935 So.2d 431, 442-43 (Ala. 2006), quoting in turn Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995) ).
It is undisputed that there existed a valid mortgage contract between the parties. However, it is also clear that Tidmore did not perform under that contract; he tendered many late or incomplete payments, and he then defaulted on the loan outright as of October 2014. Tidmore cannot establish his own performance under *591 the mortgage contract, and, therefore, he failed to present evidence of an essential element of his breach-of-contract counterclaim. See Winkleblack v. Murphy, 811 So.2d 521, 529 (Ala. 2001) ("[I]n order to establish that a defendant is liable for a breach of a bilateral contract, a plaintiff must establish that he has performed, or that he is ready, willing, and able to perform under the contract."); and Beauchamp v. Coastal Boat Storage, LLC, 4 So.3d 443, 450-51 (Ala. 2008). Moreover, Tidmore has failed to demonstrate how he was damaged by the alleged breach, i.e., the purported failure of Citizens to notify him that it was considering accelerating the mortgage indebtedness. That notice was sent on February 10, 2015, and, in response, Tidmore filed for bankruptcy protection. After that bankruptcy action was dismissed, Tidmore filed a second, and, eventually, a third, bankruptcy action. Tidmore offered no argument, much less any evidence, that he could or would have brought the mortgage indebtedness current but for Citizens's alleged failure to notify him that it might accelerate the mortgage indebtedness. We cannot say that Tidmore has demonstrated that the trial court erred in entering a summary judgment in favor of Citizens on his breach-of-contract counterclaim.
Tidmore also argues that his slander-of-title and defamation claims should have survived the summary-judgment motion. Tidmore cites § 6-5-211, Ala. Code 1975, which provides that "[t]he owner of any estate in lands may commence an action for libelous or slanderous words falsely and maliciously impugning his title." However, this court has affirmed the trial court's judgment in favor of Citizens on its ejectment claim, i.e., determining that Citizens was the owner of the property at issue. Tidmore does not have title to the property, and, therefore, he may not sustain a slander-of-title claim, a required element of which is that he be the owner of the property.
Similarly, we must reject Tidmore's argument that the trial court erred in entering a summary judgment in favor of Citizens on his defamation claim. Tidmore contends that, if this court concludes that Citizens improperly foreclosed on the property, then Citizens's publications in newspapers of notice that he had defaulted on the mortgage indebtedness were defamatory. However, this court has not concluded that the foreclosure was improper. Therefore, there is no basis for Tidmore's defamation claim.
Tidmore does not argue that the trial court erred in entering a summary judgment in favor of Citizens on his remaining counterclaims. Arguments not asserted in an appellant's brief are considered waived on appeal. Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala. 2003) ("An argument not made on appeal is abandoned or waived.").
Tidmore last argues that the trial court erred by failing to conduct a hearing on his postjudgment motion. Tidmore is correct that Rule 59(g), Ala. R. Civ. P., requires the trial court to conduct a hearing on a postjudgment motion when such a hearing is requested. However, Tidmore's arguments in his postjudgment motion reasserted the arguments he had made in his opposition to the summary-judgment motion, and, on appeal, Tidmore has failed to demonstrate that the trial court erred in entering the summary judgment. Thus, there was no "probable merit" to the postjudgment motion such that Tidmore could show that the trial court's failure to conduct a hearing on his motion probably injuriously affected his rights. See Rule 45, Ala. R. App. P.; and Greene v. Thompson, 554 So.2d 376, 381 (Ala. 1989).
*592 Accordingly, for the reasons set forth above, the trial court's summary judgment in favor of Citizens is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

We do not so hold.

Tidmore's argument on appeal initially refers to "notice of intent to accelerate," but then, later, he generally refers only to an absence of "notice." Tidmore failed to identify any notice that he says Citizens failed to provide. Furthermore, Tidmore does not specifically contend, nor does the record indicate, that he did not receive notice of the foreclosure sale.

The relevant questioning and testimony is set forth as follows:
"Q. [By Mr. Lay, Tidmore's attorney]: That is the letter. Exhibit F, that you testified earlier that you believe complies with the mortgage contract as far as the notice requirement, is it not?
"A. Yes.
"Q. Could you point to me where in the notice it notifies Mr. Tidmore that he has the right to contest the action or bring a court action? That language is not in the letter, is it not?
"A. Well, I'm looking.
"THE WITNESS: Can I consult with our attorney?
"THE COURT: Sure, but I mean, do you see it in there or not? I mean, do you see those words he asked you about? I guess that's his question, do you see the words?
"MR. LAY: Judge, I don't want to tie up the time. Our point is going to be that the notice does not comply with several grounds. We'll let you look at it. I think it's sufficient for him to say that's the notice that he thinks complies with that.
"THE COURT: Is that your opinion?
"THE WITNESS: Yes, that is my opinion."

The February 10, 2015, letter from Citizens's counsel to Tidmore states:
"Your note to [Citizens], hereinafter Lender, secured by the above referenced mortgage is past due and in default. This is to advise you that because of your default in making payments your case has been referred to this Office for collection. The attached Exhibit A contains the amount to bring your loan current. The Lender will, however, withhold foreclosure proceedings for a period of ten (10) days as of the above date. Failure to cure the default on or before the ten (10) day period may result in acceleration of all monthly payments making the same immediately due and payable in full and commencement of foreclosure proceedings.
"Please contact this office and not the Lender prior to the ten (10) days and I will advise you as to the amount necessary to pay the indebtedness in full, together with accrued attorney's fees."

It also appears that there was additional property at issue in that case.

As noted later in this opinion, we conclude that Tidmore has failed to demonstrate that the price Citizens paid at the foreclosure sale was inadequate.

The tax map submitted to the trial court (in support of Citizens's motion to strike evidence submitted by Tidmore in opposing the summary-judgment motion) does not clearly indicate whether an object located on the back of lot 9 and possibly encroaching onto lot 10 is a vehicle or a shed.

There is no evidence regarding the value of the property at the time the 2012 mortgage was executed, except Malone's testimony that he believed that the value of the property was approximately equivalent to the amount of the mortgage.